UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TANGOE, INC., | : |
|     Plaintiff, | : Civil Action No. |
| v. | : |
| W.W. GRAINGER, INC., | : |
|     Defendant. | : May 7, 2014 |

## COMPLAINT

Plaintiff Tangoe, Inc. ("Tangoe"), by its attorneys, hereby alleges for its Complaint as follows:

## NATURE OF THE ACTION

1. This is an action by Tangoe for breach of contract by Defendant W.W. Grainger, Inc. ("Grainger"). Tangoe and Grainger entered into a Master Consulting Services Agreement, in December, 2011 (the "Master Agreement"), certain addenda and amendments to the Master Agreement, including Amendment Number 1 to the Master Agreement, effective December 10, 2012, and the CommCare Premium and MDM Statement of Work (the "SOW"), effective December 11, 2012, (collectively, the "Agreements"). The Agreements relate to the provision of telecom expense management software and services, including for the receipt and processing of carrier invoices, auditing those invoices for overcharges and identifying disputed charges to be presented to the carriers, the allocation of costs for Grainger's internal accounting purposes, optimization of mobile service plans, procurement portals and services for the procurement of telecommunications assets and services, and help desk services. Grainger has breached the Agreements and is liable to Tangoe in an amount exceeding $250,000.

## THE PARTIES, JURISDICTION AND VENUE

2.  Plaintiff Tangoe is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Orange, Connecticut.

3.  Defendant Grainger is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Lake Forest, Illinois.

4.  The Court has personal jurisdiction over Grainger pursuant to Conn. Gen. Stat. § 33-929, because: (i) Grainger does business in Connecticut, including the operation of stores throughout Connecticut; (ii) Grainger negotiated and contracted directly with Tangoe in Orange, Connecticut and the Agreements were finally executed in and thus legally formed in Connecticut; (iii) Grainger transacted additional business with Tangoe by means of an Historical Audit Statement of Work relating to the Agreement; (iv) Grainger was aware that the Agreement would be partially performed in Connecticut; (v) the Agreement was partially performed in Connecticut; (vi) Grainger's agents and/or representatives sent correspondence concerning the Agreement to agents and/or representatives of Tangoe in Connecticut; (vii) Grainger's agents and/or representatives engaged in communications concerning the performance of the Agreements with agents and/or representatives of Tangoe in Connecticut; and (viii) Grainger sent various payments concerning the Agreement to Tangoe in Connecticut.

5.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship among the parties, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in this District.

## TANGOE'S BUSINESS

7.      Tangoe was founded in 2000 and is a global leader in communications lifecycle management solutions. Tangoe provides software, consulting, and technology-enabled managed services that help global organizations procure, manage, and control their fixed and mobile communications assets and their associated costs. Tangoe's Mobile Device Management ("MDM") solution is a comprehensive smartphone and tablet lifecycle management solution. Tangoe's Telecom Expense Management ("TEM") services are a key offering within its communications lifecycle management service suite.

8.      Through its TEM services and MDM solution, Tangoe supports its clients' businesses around the world by providing fully managed solutions that permit its clients to understand, control and manage their fixed and mobile communications systems in order to maximize value from their telecommunications services and reduce costs.

## THE AGREEMENTS

9.      Tangoe was the last party to sign the Agreements and did so in Connecticut.

10.     Under the terms of the SOW, Tangoe agreed to implement and configure Tangoe's CommCare Management Platform for Grainger based on information provided by Grainger and Grainger's vendors. Grainger committed itself to assist in facilitating the implementation process by agreeing to certain tasks and responsibilities, as set forth in the SOW.

11.     The SOW set forth the compensation due to Tangoe for the work performed pursuant to the SOW. More particularly, Exhibit A to the SOW set forth a fee schedule and provided that, in the event Grainger terminated the SOW for convenience, Grainger would pay to

Tangoe an early termination fee.

12. At the time of their respective executions, each of the Agreements, including the SOW, were supported by adequate consideration.

13. Pursuant to the terms of the SOW, Tangoe performed the implementation services on behalf of Grainger.

14. In consideration for the work performed by Tangoe in accordance with the terms of the SOW, Grainger agreed to pay Tangoe an early termination fee in the event it terminated the SOW for convenience.

15. The SOW included specific conditions for the payment of the early termination fee and the calculation of the early termination fee.

16. Grainger agreed to pay all amounts due and payable to Tangoe in accordance with the terms of the SOW.

17. The Master Agreement provided that any amounts past due and owing, and not paid in accordance with the Master Agreement or SOW, would accrue interest as set forth therein.

18. The Agreements provided that they shall be governed, interpreted and construed in accordance with the laws of the State of New York, without regard to conflict of laws principles.

## TANGOE'S PERFORMANCE AND GRAINGER'S BREACH OF THE AGREEMENTS

19. Tangoe performed all obligations on its part to be performed under the Agreements.

20. In a letter dated December 17, 2013, Grainger purported to terminate the Agreements based on an alleged material breach by Tangoe.

21. On December 20, 2014, in a letter to Grainger, Tangoe rejected Grainger's contentions that Tangoe had committed a material breach of the Agreements.

22. Because Tangoe did not commit a material breach of the Agreements, Grainger had no legal grounds for termination.

23. Subsequently, on December 24, 2013, Grainger informed Tangoe that, even if Grainger had no basis to terminate the Agreements based on a material breach by Tangoe, Grainger was terminating the Agreements pursuant to the termination for convenience provision.

24. Notwithstanding Tangoe's December 26, 2013 and subsequent demands for payment of the early termination fee, Grainger has refused to pay the early termination fee to Tangoe.

25. Tangoe continued to stand ready, willing, and able to perform its obligations under the Agreements had Grainger not terminated the Agreements for its convenience.

**COUNT ONE:**   **Breach of Contract**

1-25. Tangoe repeats and realleges paragraphs 1 through 25 as if fully set forth herein.

26. By virtue of the foregoing, Grainger breached the Agreements in one or more of the following ways, among others:

    (a) by attempting to wrongfully and without justification purporting to terminate the Agreements; and/or

    (b) by failing and refusing to pay fees and other amounts owing under the Agreements to Tangoe.

30. As a result of Grainger's breach of contract, Tangoe has suffered injury and damage for which Grainger is liable. Such monetary damages include, without limitation,

5

amounts outstanding under the Agreements (including fees and interest).

31. Tangoe is entitled to its costs in enforcing the Agreements.

32. Despite demand, Grainger has failed to pay for amounts due and owing under the Agreements.

WHEREFORE, Plaintiff Tangoe seeks:

1. Monetary damages;

2. Costs as allowed by the Agreements and by law;

3. Interest as allowed by the Agreements and by law; and

4. All such further relief whether at law or in equity that the Court deems to be just and appropriate.

PLAINTIFF,
TANGOE INC.

By: /s/Glenn M. Cunningham
Glenn M. Cunningham
Federal Bar No. ct09995
Lee A. Duval
Federal Bar No. ct23387
For Shipman & Goodwin LLP
One Constitution Plaza
Hartford, Connecticut 06103
Tel.: (860) 251-5000
Fax: (860) 251-5218
Email: gcunningham@goodwin.com
Email: lduval@goodwin.com
Its Attorneys